FILED

2024 Jul-31  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

AMANDA BAILEY,          )
                            )
        Plaintiff,      )
                            )
       vs.              )    Case No.  4:23-cv-00599-HNJ
                            )
COMMISSIONER, SOCIAL SECURITY   )
ADMINISTRATION,          )
                            )
        Defendant.    )

## MEMORANDUM OPINION

Plaintiff Amanda Bailey seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment.  (Doc. 12).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id.* at §§ 404.1520(d), 416.920(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.").

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  20 C.F.R. §§ 404.1512(b)(3), 416.912(b)(3), 404.1520(g), 416.920(g).  If the claimant can perform other work, the evaluator will not find the claimant disabled.  *See id.* §§

404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the claimant cannot perform other work, the evaluator will find the claimant disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . .  Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek*, 587 U.S. at 103 (citations omitted).  Therefore, substantial evidence exists even if the evidence

preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Bailey, age 29 at the time of the ALJ hearing, protectively filed applications for a period of disability, disability insurance, and supplemental social security benefits on September 25, 2020, alleging disability as of September 22, 2020. (Tr. 53, 240-54). The Commissioner denied Bailey's original application and her request for reconsideration. (Tr. 83-138, 144-64). Bailey timely filed a request for hearing on April 5, 2022. (Tr. 165-66). An Administrative Law Judge ("ALJ") held a hearing on September 20, 2022. (Tr. 53-82). The ALJ issued an opinion on October 3, 2022, denying Bailey's application. (Tr. 31-47).

Applying the five-step sequential process, the ALJ found at step one that Bailey did not engage in substantial gainful activity after September 22, 2020, her alleged disability onset date. (Tr. 37). At step two, the ALJ found Bailey manifested the severe impairments of bi-polar disorder, post-traumatic stress disorder, and anxiety. (*Id.*) At step three, the ALJ found that Bailey's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*).

Next, the ALJ found that Bailey exhibited the residual functional capacity ("RFC") to perform

a full range of work at all exertional levels but with the following non-

exertional limitations and as a part of the job requirements: The claimant can understand, remember, and carry out simple and detailed (but not complex) instructions. She can maintain attention and concentration to those types of tasks for periods of two hours, but there should be no close proximity or any tandem tasks involved in the work activity. Close proximity would be closer than three feet or an arm's length and tandem tasks would be where more than one individual is performing work activity on one particular segment or piece of equipment at the same time. Interaction with the public, co-workers, or supervisors should be no more than occasional and it should be brief, no more than thirty minutes at one time. Any change in the work setting should be no more than occasional.

(Tr. 40).

At step four, the ALJ determined Bailey did not retain the ability to perform her past relevant work as a poultry dresser, tagger, cook helper, and fast food worker. (Tr. 45). However, at step five, the ALJ determined, considering Bailey's age, education, work experience, and RFC, she could perform a significant number of other jobs in the national economy, including tagger, small product assembler, marker, information clerk, and telephone clerk. (Tr. 45-46). Accordingly, the ALJ determined Bailey has not suffered a disability, as defined by the Social Security Act, since September 22, 2020. (Tr. 46).

Bailey timely requested review of the ALJ's decision. (Tr. 237-39). On January 20, 2023, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 18-23). On April 21, 2023, the Appeals Council granted Bailey an extension of time to file a civil action (Tr. 1), and on May 10, 2023, Bailey filed a complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Bailey argues the ALJ's RFC finding failed to include all limitations the state agency consultants imposed due to Bailey's mental health, and the ALJ failed to build a sufficient logical bridge between the medical evidence and his conclusions about Bailey's social limitations. For the reasons discussed below, the undersigned concludes those contentions do not warrant reversal.

**I.    The ALJ Properly Considered the State Agency Doctors' Opinions, and He Did Not Omit Any Necessary Limitations from the RFC Finding**

Bailey first argues the ALJ's RFC finding failed to include all limitations the state agency consultants imposed. However, Bailey's argument ignores the opinion of one state agency physician who imposed limitations consistent with the RFC finding; applicable law does not require an ALJ to include every limitation a reviewing physician imposes; and the court does not construe the state agency consultant's assessment as necessarily inconsistent with the RFC finding. Overall, substantial evidence supports the ALJ's RFC finding.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [their] limitations." *Id.* at § 404.1545(a)(1). Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's

RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

In assessing Bailey's RFC, the ALJ relied upon the opinions of state agency medical consultants.  "The opinions of agency [medical or] psychological consultants may be considered medical opinions, and their findings and evidence are treated similarly to the medical opinion of any other source."  *Gordon v. Saul*, No. 8:18-CV-829-T-SPF, 2019 WL 4254470, at *5 (M.D. Fla. Sept. 9, 2019) (citing 20 C.F.R. §§ 404.1513a(b), 416.913a(b)).[2]

Social Security regulations declare the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 404.1520c(a).  The ALJ must apply the same factors in the

---

[2] "A medical consultant is a member of a team that makes disability determinations in a State agency . . . , or who is a member of a team that makes disability determinations for [the SSA] when [the SSA] make[s] disability determinations." 20 C.F.R. § 404.1616(a).  "The medical consultant completes the medical portion of the case review and any applicable residual functional capacity assessment about all physical impairment(s) in a claim." *Id.*

consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors. *Id.* § 404.1520c(b)(2). Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1)-(2).

The ALJ also may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations. *Id.* § 404.1520c(c)(3)-(5). The ALJ "may" conclude that an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file. *Id.* § 404.1520c(c)(3)(v). The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* § 404.1520c(c)(5).

On May 2, 2021, Judith E. Meyers, Psy.D., assessed Bailey's mental RFC at the

initial state agency level.  Dr. Meyers concluded Bailey did not experience understanding and memory limitations, as she can understand and retain both simple and complex instructions.  She also did not experience sustained concentration and persistence limitations, as the evidence suggested she possesses the capacity to persist at tasks.

As to social interaction, Bailey experienced moderate limitation in the abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers and peers without distracting them or exhibiting behavioral extremes.  She experienced no significant limitation in the abilities to ask simple questions, request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness.  Dr. Meyers commented that "[s]ocial interactions are harder for this claimant than others in peer group, and claimant will function best at tasks with little to no social demands for communicating with others."

As to adaptation, Bailey experienced moderate limitation in the ability to respond appropriately to changes in the work setting.  She experienced no significant limitation of the abilities to appreciate normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals, or make plans independently of others.  Dr. Meyers commented that the evidence "suggests the capacity to avoid hazards and arrange transportation." (Tr. 94-96, 109-112).

On March 16, 2022, Steven D. Dobbs, PhD., assessed Bailey's mental RFC at the state agency reconsideration phase.  As to understanding and memory, Dr. Dobbs

assessed moderate limitation in Bailey's ability to understand and remember detailed instructions, but no significant limitation in Bailey's abilities to remember locations and work-like procedures and to understand and remember very short and simple instructions.   Dr. Dobbs commented that Bailey was "[a]ble to understand and remember simple and detailed but not complex instructions." (Tr. 124, 135).

As to sustained concentration and persistence, Bailey experienced moderate limitation in the abilities to carry out detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and work in coordination with or in proximity to others without being distracted by them.   She experienced no significant limitation in the abilities to carry out very short and simple instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.   Dr. Dobbs commented that Bailey was "[a]ble to sustain attention/concentration for two hour periods to complete simple/detailed tasks during a regular workday at an acceptable pace and attendance schedule.  Proximity to others shouldn't be intense."  (Tr. 125, 136).

As to social interaction, Bailey experienced moderate limitation in the abilities to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers

without distracting them or exhibiting behavioral extremes.  She experienced no significant limitation in the abilities to ask simple questions, request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. Dr. Dobbs commented that Bailey was "[a]ble to interact appropriately in an uncrowded work setting and respond appropriately to constructive instructions."  (Tr. 125, 136).

As to adaptation, Bailey experienced moderate limitation in the ability to respond appropriately to changes in the work setting.  She experienced no significant limitation in the abilities to appreciate normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others.  Dr. Dobbs commented that Bailey was "[a]ble to respond to at least simple/infrequent changes in routine."  (Tr. 125, 136).

The ALJ expressed as follows regarding the state agency consultants' opinions:

[The state agency consultants] had the opportunity to review the claimant's available medical records and completed summaries of the record at that time.  Their opinions are based on significant experience and knowledge of agency requirements; based on comprehensive assessments of the claimant's abilities; and supported by detailed reports with evidence, including but not limited to, diagnostic imaging as well as routinely normal physical and mental findings and conservative treatment, in the treatment notes at the time of their reviews.  The State agency consultants' opinions at the initial level and upon reconsideration that the claimant was able to work at all exertional levels and that she has moderate limitations in her ability to interact with others and adapt or manage herself is [*sic*] consistent with the record as a whole as discussed in detail. However, the Administrative Law Judge finds that the evidence, which the consultant's [*sic*] at the initial level did not have the benefit of at the time of their reviews, support [*sic*] that the claimant has moderate, instead

of mild, limitations in her ability to understand, remember, or apply information and in her ability to concentrate, persist, or maintain pace. Based on the forgoing factors, their opinions are generally consistent with the evidence as a whole and persuasive.

(Tr. 43-44).

Bailey argues the ALJ erred by failing to explicitly incorporate into the RFC finding Dr. Meyers' statement that Bailey would function best at tasks with little to no social demands for communicating with others, despite finding both state agency doctors' opinions generally consistent with the evidence as a whole and persuasive. Rather than ruling Bailey should experience "little to no social demands," the ALJ declared Bailey should avoid

> close proximity or any tandem tasks involved in the work activity. Close proximity would be closer than three feet or an arm's length and tandem tasks would be where more than one individual is performing work activity on one particular segment or piece of equipment at the same time. Interaction with the public, co-workers, or supervisors should be no more than occasional and it should be brief, no more than thirty minutes at one time.

(Tr. 40). According to Bailey, Dr. Meyers' statement imposed more restrictive limitations than the ALJ adopted, and the ALJ erred by not adopting those limitations or explaining his failure to adopt them.

Bailey's argument rests partially on outdated legal principles. Bailey asserts that "when an ALJ assigns great weight to a medical opinion, he is required to adopt the limitations contained in the opinion or explain why he is discounting the limitations." (Doc. 15, at 10). But all the cases she cites pre-date the 2017 amendment to Social

Security regulations rejecting the rule that an ALJ must afford great weight to a treating physician's opinion.  (*See* Doc. 15, at 9-12).  *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (citation omitted) ("In 2017, the Commissioner eliminated the treating-physician rule.").  As discussed, the regulations no longer require (or permit) an ALJ to afford specific weight to any medical opinion or administrative medical finding.  Rather, they focus the ALJ's inquiry on the supportability and consistency of a medical source's opinion.  *See* 20 C.F.R. § 404.1520c(a).

Pursuant to the revised regulations, the ALJ did not assign "great weight" to either of the state agency consultants' opinions.  Rather, he found those opinions "generally consistent with the evidence as a whole and persuasive."  (Tr. 44).  The ALJ did not need to adopt wholesale every aspect of the state agency medical opinions, as long as he engaged in a thorough review of the evidentiary record and assessed Bailey's medical condition as a whole.  As another district court within the Eleventh Circuit recently explained:

> So long as the ALJ's decision makes clear he considered the claimant's medical condition as a whole, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citation omitted).  And when an ALJ finds a medical source's opinion persuasive, an ALJ "does not abdicate their authority — and obligation — to reach an RFC determination based on a thorough review of the entire evidentiary record." *Vilches v. Kijakazi*, No. 3:21-cv-15-KFP, 2022 WL 11455775, *3 n.2 (M.D. Ala. Oct. 19, 2022).  "An ALJ does not properly discharge [his] duty by finding a single medical opinion persuasive and then deferring verbatim to that physician's findings.  The ALJ need not adopt every part of an opinion that the ALJ finds generally persuasive." *Id.*; *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-

1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ."); *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, *5 (M.D. Fla. Mar. 31, 2022) ("But finding an opinion persuasive does not mean it is controlling."). So Scheib's concern that the ALJ did not incorporate into the RFC every finding from a generally persuasive source is unfounded. What matters is whether the record reveals enough about the supportability and consistency of the medical source's opinion that the court can determine the RFC is supported by substantial evidence. *See Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, *4 (M.D. Ala. Feb. 11, 2022); *Cook*[ *v. Comm'r of Soc. Sec.*], [No. 6:20-CV-1197-RBD-DCI,] 2021 WL 1565832, at *3[(M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)].

*Scheib v. Comm'r of Soc. Sec.*, No. 2:22-CV-489-NPM, 2023 WL 6365462, at *5 (M.D. Fla. Sept. 29, 2023) (first three alterations in original).

In addition, Bailey's argument addresses only one of the two state agency medical opinions in the record. Drs. Meyers and Dobbs both assessed moderate limitations in the same areas of social functioning:  interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. Neither Dr. Meyers nor Dr. Dobbs assessed any significant limitations in the abilities to ask simple questions, request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. Both doctors' assessments of no more than moderate social function limitations support the ALJ's RFC finding that Bailey should avoid close proximity and tandem tasks, and she should experience only occasional and brief interaction with the public, co-workers, and

supervisors.[3]  *See Sheldon v. Comm'r of Soc. Sec.*, No. 8:15-CV-1831-T-JSS, 2016 WL 4120444, at *3 (M.D. Fla. Aug. 3, 2016) (citation omitted) ("[T]he ALJ's hypothetical and RFC sufficiently accounts for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to no more than occasional interaction with crowds, the public, and co-workers.").

The two state agency doctors differed only in the comments they added to their assessments.  Dr. Meyers stated Bailey should experience little to no social demands, while Dr. Dobbs stated Bailey could interact appropriately in an uncrowded work setting and respond appropriately to constructive instructions.  Bailey focuses on perceived inconsistencies between Dr. Meyers's statement and the ALJ's RFC finding, but she does not address the consistency of Dr. Dobbs's statement with the ALJ's RFC finding.  That omission thwarts her argument, as Dr. Dobbs's statement supports the RFC finding.  An uncrowded work setting would allow Bailey to avoid close proximity to others, tandem tasks, and more than occasional interaction.  Constructive instructions would assist her interactions with supervisors and co-workers.  Thus, even if Dr. Meyers's recommendation that Bailey would function best with little to no social demands for communicating with others conflicts with the ALJ's finding, Dr. Dobbs's statement supports that finding.

---

[3] In addition, as Bailey points out, when assessing Bailey's satisfaction of the Paragraph B criteria of Listings 12.04, 12.06, and 12.15, the ALJ found, consistent with Drs. Meyers' and Dobbs' assessments, that Bailey experienced moderate limitation of her ability to interact with others.  (Tr. 38; Doc. 15, at 14).

In addition, the court questions whether a conflict manifests between Dr. Meyers's statement and the RFC finding. As an initial matter, Dr. Meyers's assessment of only moderate limitations supports the ALJ's RFC finding; only her subsequent comments potentially conflict with the RFC finding. Moreover, Dr. Meyers did not restrict Bailey to an environment with little to no social demands; she only observed Bailey would function *best* in such an environment. *See Crumley v. Comm'r of Soc. Sec.*, No. 3:17-CV-973-J-PDB, 2019 WL 1417320, at *4 (M.D. Fla. Mar. 29, 2019) (characterizing a state agency doctor's observations that the claimant "'would respond best' and 'may benefit from' a nonconfrontational supervisor" as recommendations for "an ideal situation," not "a firm limitation").

Finally, the phrase "little to no social demands for communicating with others" carries no specific technical, regulatory, or statutory meaning. Contrary to Bailey's assertions, the court does not view the phrase as inherently inconsistent with the ALJ's finding of a need to avoid close proximity and tandem tasks, and to experience only occasional and brief interactions with others. In the Social Security context, "'occasionally' means 'occurring from very little up to one-third of the time.'" *Arquette v. Comm'r of Soc. Sec.*, No. 6:14-CV-206-ORL-DAB, 2015 WL 451052, at *4 (M.D. Fla. Feb. 3, 2015) (citing SSR 83-10, 1983 WL 31251, at *5 (1983); SSR 96-6p, 1996 WL 374185, at *3 (1996)). Other courts have construed a doctor's restriction of a Social Security claimant to "minimal" interaction with others as consistent with an ALJ's RFC finding for "occasional" interaction with others. *Id.* at *5 (citing *Hampton v. Colvin*, No.

C13-0806-RSM. 2014 WL 201657 (W.D. Wash. Jan.17, 2014)); *see also Crumley*, 2019 WL 1417320, at *4 (citations omitted) ("Restricting a claimant to only occasional interaction with the public, coworkers, and supervisors can account for [moderate] restrictions related to social interaction and work adaptation."); *Sheldon*, 2016 WL 4120444, at *6 ("[T]he ALJ's RFC finding sufficiently accounts for Plaintiff's difficulties in social functioning – namely the limitations regarding adapting to changes in the work setting found by Dr. Spencer and the limitation to minimal contact with others found by Dr. Spence – by limiting Plaintiff to simple tasks and no more than occasional interaction with others and gradual changes in the work setting."); *Yousif v. Astrue*, No. 8:12-CV-00124-T-23, 2013 WL 764859, at *4 (M.D. Fla. Jan. 28, 2013), *report and recommendation adopted*, No. 8:12-CV-124-T-23MAP, 2013 WL 764705 (M.D. Fla. Feb. 28, 2013) (ALJ posed an accurate hypothetical question to the vocational expert when he stated the claimant could have occasional contact with the public, even though a doctor opined the claimant could have only minimal contact with the public).   Similarly, Dr. Meyers's recommendation for little to no social demands comports in some respects with the ALJ's assessment of "occasional" interaction, which according to the regulatory definition, may occur only "very little" during a workday.

Bailey relies upon *Thompson v. Kijakazi*, No. 3:20-CV-1439-JRK, 2022 WL 1165019 (M.D. Fla. Apr. 20, 2022), but the court disagrees with Bailey's characterization of that case as "nearly identical" to this case.   (Doc. 15, at 17).   In *Thompson*, a state agency physician recommended the claimant "may function in an environment with

minimal social interaction with the general public and coworkers and a supportive management style." *Id.* at *4. The ALJ found the opinion persuasive, yet the ALJ "did not include all the limitations that [the doctor] assigned," including only restricting the claimant to "'occasional' interaction with co-workers." *Id.* at *6. As discussed, an ALJ's failure to include every limitation a doctor imposes in an RFC finding does not produce error, as long as substantial evidence supports the RFC finding. *See, e.g., Scheib*, 2023 WL 6365462, at *5.

Despite finding the state agency physician's opinion generally persuasive, the ALJ in *Thompson* rejected the doctor's assessment that the claimant experienced only moderate impairment in interacting with others, and instead assessed marked limitation in interacting with others. *Thompson*, 2022 WL 1165019, at *4. No evidence in this case indicates Bailey experienced a marked limitation in interacting with others.

In addition, though the *Thompson* court found the ALJ erred in considering the state agency doctor's opinion, it did not base that ruling solely on the doctor's assessment of the claimant's ability to interact with others. Rather, the court found the ALJ erred in considering all aspects of the state agency doctor's opinion, and the ALJ also improperly considered four other medical opinions. The court based its decision to reverse and remand the case to the Commissioner on the totality of the ALJ's mistakes, not only on the perceived discrepancy between the doctor's recommendation for "minimal" social interaction and the ALJ's limitation to "occasional" interaction. *Id.* at *6 ("Given the various errors in addressing the mental opinions of record, and in

19

comparing them to the ultimately-assigned RFC, the undersigned cannot say that the errors are harmless.").

Finally, as discussed, other district courts do not find a necessary conflict between the terms "minimal" and "occasional." The *Thompson* opinion's identification of such a conflict may arise more from the other factors identified, such as the court's apparent belief that an ALJ should adopt all limitations a doctor imposes, the assessment of marked limitations in interacting with others, and the ALJ's improper consideration of multiple medical opinions.

For these reasons, the court finds the *Thompson* opinion holds minimal persuasive value for the facts of this case.

Overall, substantial record evidence supports the ALJ's RFC finding for Bailey's social limitations. Bailey testified during the administrative hearing that she cannot maintain employment for more than three months because she experiences panic attacks, cannot maintain regular attendance, fears being fired, and behaves aggressively toward managers who attempt to correct her performance. (Tr. 65-67). However, in her Function Report, Bailey reported she cares for her spouse's three-year-old son, and she spends time with others in person, on the phone, and through texting. (Tr. 291-95). She also reported to Donald Blanton, Ph.D., during an April 22, 2021, consultative examination that she cared for her four-old-stepson, played video games, researched on the internet, and used social media. (Tr. 585). During a February 26, 2022, consultative examination with Stephen Long, LPC, Bailey reported occasionally going out with

friends.  (Tr. 609).  While these activities might not directly equate to an ability to perform full-time work activity, they support the ALJ's finding that Bailey may not experience all the social limitations she alleges.  *See Love v. Colvin*, No. 6:15-CV-338-WMA, 2016 WL 741974, at \*5 (N.D. Ala. Feb. 24, 2016) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)) (An ALJ should rely upon evidence of a claimant's daily activities as a "basis to discredit a claimant's testimony when [his or] her daily activities demonstrate a higher level of functioning than her alleged disabling symptoms would allow.").

As the ALJ observed, Bailey's medical records reflect she "had a good rapport with providers, had good interactions with non-medical staff, and appeared comfortable during appointments."  (Tr. 38).  During emergency department visits for acute conditions on October 1 and 31, 2018, and January 12, 2019, providers observed cooperative behavior and appropriate mood and affect. (Tr. 360, 376, 408).  Even after the hospital discharged Bailey on November 16, 2018, following a suicide attempt, providers described her as cooperative and calm.  (Tr. 374).

Progress notes from Directions for Living clinic on December 5, 2018, and October 16, 2019, describe Bailey as interactive, pleasant, and cooperative.  (Tr. 413-15).

During a March 2, 2020, medical visit to Quality of Life Health Services, the nurse practitioner described Bailey as fully oriented, with no anxiety and appropriate mood and affect.  (Tr. 444).  During a psychotherapy session at Quality of Life on

March 31, 2020, the counselor described Bailey as cooperative and easily engaged in conversation. (Tr. 477). On April 23, 2020, the counselor stated Bailey made good progress and identified multiple positive changes. (Tr. 481).

On June 5, 2020, Bailey presented as slightly irritable but cooperative. She reported increased anger and sleepiness, which she attributed to a medication change. (Tr. 484-86). By June 11, 2010, Bailey had changed her medications again, and she felt "so much better." (Tr. 487). The counselor described Bailey as cooperative. (Tr. 490).

On July 2, 2020, she reported her medications had improved her anxiety and enabled her to leave the house to go out in public more frequently. (Tr. 491). The counselor described Bailey as cooperative and easily engaged in conversation. (Tr. 493).

On July 23, 2020, Bailey reported quitting a job because she suffered a panic attack, but she had already started a new job where she would earn more money. (Tr. 494). The counselor described Bailey as cooperative and easily engaged in conversation. (Tr. 496). On October 9, 2020, Bailey reported quitting multiple jobs since her last visit, but the counselor nonetheless described her as cooperative. (Tr. 497, 502).

On October 16, October 26, November 3, November 30, December 14, and December 28, 2020, and on February 15, February 24, March 29, April 1, and September 27, 2021, the counselor described Bailey as cooperative and easily engaged in conversation. (Tr. 505, 508, 511, 514, 521, 525, 528, 531, 569, 575, 578, 604).

On September 1, 2022, Bailey presented with irritable mood, and she reported her mood had worsened due to situational stressors. (Tr. 614).

Moreover, Dr. Long described Bailey as cooperative and engaged throughout the consultative examination.  (Tr. 607, 609).  As discussed, no treating, examining, or reviewing physician imposed more than moderate limitations on Bailey's social functioning.

The above-described medical records provide substantial evidentiary support for the ALJ's imposition of the particular social limitations in the RFC finding.

Bailey also argues the ALJ failed to include all of her social interaction limitations in the hypothetical question to the vocational expert.  "'In order for a vocational expert's testimony to constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).  However, "'[t]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'"  *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).  The ALJ's hypothetical question mirrored his RFC finding as to Bailey's social interaction limitations.  (Tr. 76).  As discussed, substantial evidence supported the ALJ's RFC finding.  Accordingly, the ALJ did not err in the hypothetical question posed to the vocational expert.

## II.   Bailey's Argument that the ALJ Failed to Present a Logical Bridge Between the Record Evidence and the RFC Finding Fails Because Substantial Evidence Supports the RFC Finding

Bailey argues the ALJ erred because he failed to build a sufficient "logical bridge"

between the record evidence and the RFC finding regarding Bailey's social limitations. The undersigned did not locate any Eleventh Circuit cases employing the phrase "logical bridge" to describe an ALJ's duty in assessing evidence.  The Seventh Circuit has expressed that even though an ALJ "need not specifically address every piece of evidence, [he] must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citations omitted). However, the Seventh Circuit recently clarified in an unpublished opinion that the "logical bridge" language "is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021) (citing *Biestek*, 587 U.S. at 102).

Other district courts within the Eleventh Circuit have observed and agreed with that clarification. *See, e.g., Gala v. Comm'r of Soc. Sec.*, No. 2:23-CV-642-JES-KCD, 2024 WL 2880417, at *4 (M.D. Fla. Apr. 3, 2024), *report and recommendation adopted*, No. 2:23-CV-642-JES-KCD, 2024 WL 2239070 (M.D. Fla. May 17, 2024) (citing *Brumbaugh*, 850 F. App'x at 977; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)) ("A logical bridge simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.' . . . Ultimately, this requirement does not alter the substantial evidence standard. . . ."); *Broomfield v. Kijakazi*, No. 22-CV-60879, 2023 WL 6376456, at *8 n.8 (S.D. Fla. Sept. 29, 2023) (citing *Brumbaugh*, 850 F. App'x at 977) ("The 'logical bridge' language does not alter the applicable substantial evidence standard, which the ALJ here has satisfied."); *Najjar v. Comm'r of Soc. Sec.*, No. 2:21-CV-170-JLB-LLL, 2022 WL

3714801, at *2 n.3 (M.D. Fla. Aug. 29, 2022) (citing *Brumbaugh*, 850 F. App'x at 977; *Edwards v. Astrue*, No. 3:07-cv-937-J-TEM, 2009 WL 890279, at *6 (M.D. Fla. Mar. 31, 2009)) ("As the Commissioner observes, the 'logical bridge' language used by Ms. Najjar is not found in the relevant regulations and has not been adopted by the Eleventh Circuit. . . .   Rather, the language originates in the Seventh Circuit, which has explained that the language 'does not alter the applicable substantial-evidence standard.'").

As previously determined, substantial evidence supported the ALJ's inclusion of Bailey's social interaction limitations in the RFC finding.   Accordingly, to the extent this court may appropriately use the "logical bridge" terminology, a logical bridge existed between the evidence and the RFC finding.   The ALJ did not err.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 31st day of July, 2024.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE